Welcome to the third day of our panel hearing in Atlanta. Judge Rosenbaum and I are very thankful and very grateful and very happy to have with us Judge John Steele from the Middle District of Florida. He sits in Fort Myers. He is now on senior status, still doing a lot of work for the U.S. Judiciary and he's been kind enough to come and help us with our cases, so we're glad you're here. You are familiar with our time clock. When the yellow light goes on, that means that your time is drawing to a close, so you can begin to wrap up. If we take you beyond the red light, then don't worry about it. Just keep going as long as we're talking to you. And with that, we're ready to start with our first case, which is number 20-13221, Cartarvis Jordan v. State of Georgia et al. And before you start, Mr. Jernigan, I want to acknowledge you and University of Georgia Law School for taking this case. We really, really do appreciate it and we couldn't do our work without lawyers taking the time and the energy to handle some of these cases, so we're very appreciative. Whenever you're ready. Thank you, Your Honors, and may it please the Court. My name is Roby Jernigan and I represent Cartarvis Jordan. This Court should reverse the District Court's grant of the prison official's motion for summary judgment for two reasons. First, the prison official's never denied knowledge that Mr. Jordan's cellmate, Mr. Upshaw, was a meth user suffering from paranoid delusions who had attacked his previous cellmate just one day before, stabbing Mr. Jordan 11 different times. And second, the District Court abused its discretion when it granted summary judgment before material requested discovery had been produced that showed, in part, that Mr. Upshaw had been designated as a member of a security threat group, which the prison official's never disclosed to Mr. Jordan or the District stabbing Mr. Jordan, not just the one that they represented to the lower court. All right, let's go through some of those contentions. So the complaint, which is verified, doesn't contain all of those allegations, right? Some of those allegations come later in the case at the summary judgment stage, right? Correct, Your Honor. The verified, I just want to make sure I've got the sequence right. The verified complaint contains only the allegations about the attack, which references only one shank, and the correction officers allege failure to do anything or to intervene, right? Yes, Your Honor, and he also alleges in the verified complaint that Mr. Upshaw had a violent history and was a meth user. Right, but there's no and I know he was proceeding pro se, but there's no allegation in the verified complaint that these correctional officers knew, right, about the, for example, the attack the day before against another inmate. Yes, Your Honor, he does not specifically state that until his response to the motion for summary judgment. Okay. But still, he claims himself that he knew, basing it on his personal knowledge, that he knew about Mr. Upshaw's previous attack and that he was a known meth user suffering from those paranoid delusions. And so, additionally, the most important point is that the prison officials never actually denied that knowledge. Instead, they denied something entirely different. They denied that they were not aware that Mr. Upshaw posed any specific threat to Mr. Jordan, nor that they had seen him do anything violently. But that's different than denying that they did not know that he had attacked his previous cellmate and was a meth user suffering from paranoid delusions. Since you are focusing in part on that, what were the allegations from Mr. Jordan's perspective about that prior attack? Yes. Did he provide specifics about it or just say generally he attacked his previous cellmate the day before? It was not until, again, his response to summary judgment that he provided more details that he had attacked. Mr. Upshaw used a kitchen tray, a lunch tray, to attack his cellmate. In the initial verified complaint, he only just provided that he had attacked his previous cellmate and had to be moved to Mr. Jordan's cell, upon which Mr. Jordan objected to being placed with Mr. Upshaw because of that known history that he had. And so, additionally, Your Honors, it's especially true that the prison officials were not aware of this because, as stated, Mr. Jordan himself pleaded that he was aware of this. And so, in a cell, in a unit like the segregation unit in Valdosta State Prison, which houses only 25 cells, has a small, limited staff, again, it's unlikely that the prison officials would not have this knowledge. It's especially true considering the Georgia Department of Corrections policies. Specifically, policy number 209.06 states that in the segregation unit, when there are movements or unscheduled transfers of inmates or any incidents that take place, that there will be reports about that. And those reports will be distributed daily to shift supervisors. And so, again, just providing further evidence that there's at least a potential that the prison officials did know about Mr. Upshaw's violent history. Can we talk a little bit about the failure to intervene? Absolutely. Yes, Your Honor. So, the district court also erroneously decided that the failure to intervene claim failed here. And, most importantly, based on this court's decision in Rodriguez v. Department of Corrections, when prison officials have the ability to do something and they know of a way to minimize certain harm, knowingly or recklessly failing to use that means that they are deliberately indifferent. That's exactly what happened here. The prison stood outside of the cell while Mr. Jordan, who was already in handcuffs with an unhandcuffed Mr. Upshaw, began being stabbed by Mr. Upshaw. The prison officials contend that calling for backup was all they had to do under the circumstances, but this was not an objectively reasonable response. Specifically, the prison officials had pepper spray on their person that they could have used in order to limit the effects of the attack. Additionally, the over the weapon. They simply called for backup, waited, and watched. This is not enough to meet the reasonable intervention standard that this court has set forth. This not only violates Mr. Jordan's Eighth Amendment protections, but it also violates Georgia Department of Corrections policies. As policy 209.04 states, prison officials are to use force when they know of a way to stop and minimize the effects of attack. And that force can include the use of pepper spray, specifically because the policy itself states that pepper spray is a useful way to limit the effects of an attack. And so the prison officials here have been trained to use that pepper spray. It was on their person, yet they never did use it. So the district court, I think, said, well, there was there was not enough time for them to go ahead and do that. It was the whole thing happened in less than a minute. And then I think your client, in his objections to the report and recommendation, which has the issue of not being sworn under penalty of perjury, but let's just skip that for the moment, said that it occurred over a five to seven minute period and that he had two witnesses who would so state. And so I guess my question is, under the pleading standards, is it enough to say that he had two witnesses who would say that? Or does he have to say who would say that? Under the standard, your honor, because he was making it based on his own personal knowledge, it was based on his personal knowledge. He only needs to plead that he was he that it lasted five to seven minutes because he was at the attack. Except that he doesn't say that it lasted five to seven minutes. He said he has two witnesses who would say that it lasted five to seven minutes. Isn't that right? Yes, your honor. So, so if he had said it lasted five to seven minutes, that, I mean, it seems like that might be different than saying he has two witnesses who will say it lasted five to seven minutes. I mean, it seems like the district court could decide that it wouldn't consider that because it's hearsay on summary judgment. On the other hand, the district court didn't make any comments about whether it was considering it or not. So, I don't know. I guess I'd like to hear from you about that. Well, importantly, your honor, in the verified complaint itself, Mr. Jordan alleged that he didn't allege a specific time. But what he did allege was that when Officer Allen actually arrived at the cell, she still stood there doing nothing while he was being attacked by Mr. Upshaw. And so whether or not, like I said, that does not allege a specific time here, but it does allege that it had to have lasted longer than just a short time span because it gave time for Officer Allen to arrive as well as stand there doing nothing while Mr. Jordan talked Mr. Upshaw out of the shank himself. It's also important, and as I'm getting low on time, I'd like to address the discovery issue here in this case. And the district court abused its discretion by granting summary judgment before it had allowed a full discovery in this case because it found that Mr. Jordan had not certified his efforts to confer in good faith with the prison officials to obtain that discovery. But that's incorrect for several reasons. First, Mr. Jordan did in fact confer in good faith with the prison officials here. As a pro se inmate, he sent three different letters to the prison officials requesting these documents in August, October, and September of 2018. And the prison officials actually accepted that he had conferred with them. In their response to a motion to extend the period for discovery, the prison officials note that Mr. Jordan had sent them those three requests, and in fact they promised both Mr. Jordan and the district court to turn over the discovery that he had requested, including his incident reports. But those were not turned over until this appeal, and we've still yet to receive the handcuffing policies of the segregation unit. What does the record show that Mr. Jordan received in terms, for example, of incident reports? He received nothing in terms of incident reports, Your Honor. The only thing he received from what he had requested in the lower court was the medical records from his incident. We did not receive the incident reports until this appeal specifically. And Mr. Jordan raised this four different times in four motions to compel. And very importantly here, he raised it in his response to his motion for summary judgment, where he also tacked on as a pro se inmate, he also sent in his fourth motion to compel with his response to motion for summary judgment. And there he alerted the court again that he had not received these incident reports. And so the court abused its discretion by deciding summary judgment when it knew that there was discovery outstanding in this case, and Mr. Jordan had alerted them of this, especially where the prison officials had noted that he had conferred in good faith with them and had promised to turn over that evidence. That's especially relevant because the incident report that we gained access to during this appeal shows that Mr. Upshaw had been designated as a member of a security threat group or an STG, and he was a member of the bounty hunter blood gangs. This would go even further to prove Mr. Jordan's point that the officers did indeed know that he posed a security threat in the prison, and that this would establish their subjective knowledge component on the failure to protect standard. Thank you, Your Honors. All right, Mr. Reardon, thank you very much. You have your time left for rebuttal. Ms. Cusimano. Good morning, and may it please the Court. I'm Ellen Cusimano on behalf of Officers Campbell, Sharp, and Allen. Our position is that qualified immunity protects all three officers, either because there was no constitutional violation or because the law was not clearly established that the officer's conduct was unconstitutional. Let's talk about discovery first. Absolutely, Your Honor. Mr. Jernigan says that Mr. Jordan did not receive any incident report despite requesting them before summary judgment. Is that accurate? That is accurate, Your Honor. Tell me how in the world that can be justified on the defense side of this case. The only argument that I have for that, Your Honor, is that Mr. Jordan was still required to comply with the good faith conferment requirement of Rule 37. What in the world can that possibly mean in this case? He was, whatever the merits of his legal claim, he was injured during an inmate on inmate attack. No matter how you define, I speak only for myself, not for my colleagues, no matter how you define relevance, an incident report about that particular stabbing is a document that the plaintiff is entitled to in discovery. Beyond that, you can have arguments about relevance and whether something is an oppressive demand or whatever, but when he's for the incident report of the event in which he was stabbed, that has to be turned over. And Your Honor, I agree completely. Then why isn't that in and of itself ground for reversal on the failure to prevent claim? Because if the incident report says that Mr. Upshaw was part of this gang, had attacked a previous inmate, was on a special designated list, that puts a whole new light on that claim, does it not? Not necessarily, Your Honor, because the three officers in this case would still have to have actual knowledge of what was in the report. And there's no evidence that that occurred. But how do you even begin to try to show knowledge without the report itself, without that information in it? You're making him go into this case blind. Well, not necessarily, Your Honor. Mr. Jordan did send interrogatories to all three officers, and in those interrogatories, he never once asked them if they knew about the prior attack. And going back to Rule 37... Did he know at the time that Mr. Upshaw was designated within the prison system as part of this gang and an inmate who had issues? That is not in the record. You would think not, because prison officials don't usually hand out that information carte blanche to inmates about each other inmates, for good reason. This case has, from my perspective, all sorts of problems. Your Honor, I do agree. I think those documents should have been produced by trial counsel, and I understand the court's concern. The best argument I can make is that under Rule 37, to have a motion to compel be considered, inmates still have to comply with a good faith conferment requirement. What would that have consisted of here? He made the demand, the discovery demand, and he sent letters. What else does he have to do as an inmate? With all due respect, Your Honor, he did not actually send letters. What actually happened is Mr. Jordan sent his initial requests in August of 2018. In September of 2018, he merely sent additional requests. And then in October, he sent those same exact requests. So in other words, all he did here was send more requests. As a pro se inmate, I'm cognizant of the fact that he could not have necessarily had a phone call or an in-person meeting, but I think he should have at least written a letter to opposing counsel or an email to try to resolve these issues. Did the defendants file any objections to those requests? Your Honor, it's difficult to tell because they did file their responses, but unfortunately, the responses don't have the actual requests before them. So we know that they responded and objected, but we don't know what those objections and responses, which requests they were tied to. So that's a big problem too. I mean, you can't be a litigant and just sit back and not respond in one way or another. You either produce or you object. That's the way discovery plays out. And Your Honor, I do understand. Again, I do think that the good faith conferment requirement was not met by simply providing additional discovery requests. But even if this Court finds that that requirement was met with, I think Mr. Jordan still has to show substantial harm to his case. And we know that he wants two things. The policy about handcuffing, and I'll address... I'm not worried about handcuffing. Okay. Forget handcuffing. I'm talking about the incident reports, which talk about Mr. Upshaw's dangerous persona. That's big in this case, is it not? Not necessarily, Your Honor. I think we have to go back to the case law on failure to protect claims. Just the simple fact that an inmate is part of a gang, that by itself does not provide the officers with subjective knowledge of a serious risk of harm to Mr. Jordan. You are correct, but it is part of the discovery mix. If he had gotten the... Okay, let's play this out, lawyer to lawyer. He gets an incident report that says that Mr. Upshaw is X, Y, and Z. What do you think the next discovery step is? What would you have done? What I would have done is I would have immediately asked for information about that and whether the officers knew about that. Absolutely. But Your Honor, here's the problem. But you can't do that if you don't have the report on which to ask the questions. Agreed. But Your Honor, here is something that I would point out to the court. Mr. Jordan did sit interrogatories, and significantly, in those interrogatories requests, he never once asked any of the officers if they knew about the prior attack. He did not ask them anything that would go towards actual knowledge. But the officers also didn't say they didn't know about the attack, did they? There's not an affidavit where the officers said, we did not know about the attack. Instead, they say, he never alleged that we knew about the attack, although he did allege it. That is correct, but the burden of establishing that claim is solely on Mr. Jordan. That's true. That's true. But in his objections, he later says the officers had first-hand knowledge of the attack, and there's no response by the officers saying, we didn't know about the attack. And I understand that, Your Honor. Again, I think this is one of those cases where our actual knowledge was on Mr. Jordan, and he could have easily done that by asking in his interrogatories if they knew about the prior attack. All right, let's switch over to the failure to intervene claim. Sure. I'm going to take the district court's conclusion at face value that a corrections officer does not have a constitutional duty to put himself or herself in harm's way to prevent inmate on inmate attack. Okay? I accept that at face value for purposes of our discussion. Yes. Tell me how the officers would have placed themselves in personal harm's way by telling Mr. Upshaw to stop. Well, first of all, this happened in less than one minute. Okay. You want to stop, stop, stop. We're going to count a minute down. We're going to do nothing for a minute. I'm sorry, Your Honor. We're going to hold on for a minute. We're starting at 545, and I'll give you the minute back. We're going to stop for a minute and wait. So, just freeze for a second. Just freeze. We're not doing anything for a minute. Okay. Okay. That's 45 seconds. In 45 seconds, could the officers have told Mr. Upshaw to stop what he was doing? Yes, Your Honor. They could have. Did they? They did not. Instead, what they did was they assessed the situation, and they called for backup. Okay. I'm going to give you a chance to explain why what they did was reasonable, but a couple of more questions. Could they have used pepper spray without putting themselves in harm's way to try to stop Mr. Upshaw? They could have used pepper spray, but not necessarily without putting everybody in harm's way. Mr. Jordan was close to being killed, and the officers could have used pepper spray from outside the cell without putting themselves in harm's way, yet they didn't do that either. And I understand that, Judge. So, how is the district court's conclusion accurate that the officers didn't violate any right because they didn't have to put themselves in harm's way? There were at least two ways that they could have tried to do something without jumping into the cell and subjecting themselves to personal harm. I think their failure to do that in the midst of all the chaos that was happening, that is merely negligent, and negligence cannot be deliberate indifference. And, Your Honor, I would also note that for the qualified immunity analysis, we're not concerned just whether there was a constitutional violation. That's all the district court ruled upon. The you obviously have asserted the second prong, but I'm talking about the prong that the district court ruled upon. The district court granted qualified immunity only because it found that there was no constitutional violation at all. And that's what I'm speaking to you about. And I do understand that. Again, I think given the chaos of what was happening and the fact that calling for backup, the failure to think about having to use pepper spray, that's merely negligent. And again, all of this happened within one minute. I don't think in the midst of the chaos of one minute, the failure to use pepper spray, to think about using pepper spray rises to the level of deliberate indifference. And, Your Honor, I know the district court did not address qualified immunity, but both parties briefed it below. And this court can and has in many other cases. I know. No, I'm not doubting you on that point. And we have to address the second point, too, if we get there. I understand that. But my questions are directed to the one conclusion the district court did make, which was that there was no constitutional violation at all on these facts. Sure. And I agree that it's a close call, Your Honor. I will concede that. But again, I think in less than one minute, the failure to do something, they possibly could have done things better. But you think not even telling them to stop? Like in 45 seconds, a corrections officer who is barking out orders all the time in a prison setting can't tell the other inmates, stop what you're doing, drop the shank, et cetera? Well, first of all, we don't have any testimony from Mr. Jordan as to whether anything was said at all. He said nobody did anything until the officer, the third officer came. That's in the verified complaint. Whatever you do with his response to the motion for summary judgment on evidentiary grounds, you've got a verified complaint that acts like an affidavit. Summary judgment. And he says nobody did anything. And Your Honor, I understand. Again, the best argument I can make here is that this happened in a very short period of time. Before they use pepper spray, they of course have to assess and determine whether that's proper. And I think by the time they do that and call for backup and backup arrives and resolves the situation, the situation is over. And again, just going back to qualified immunity, there's no cases saying that when two officers are outside a cell with pepper spray, they are constitutionally required to immediately either enter the cell or use pepper spray. And for that reason, I think qualified immunity does protect all of those officers. What if there's evidence in the record that shows that it happened over a five to seven minute period? Does that change the analysis at all? It could perhaps change the analysis, but I don't think we have enough details as to what happened during those five minutes. And I know I'm close to being out of my time. Keep going. It's not a problem. But I guess my question for you is, it sounds like your argument hinges on the fact that the allegation is that this occurred in less than a minute. Correct. So if it occurred in five to seven minutes over a five to seven minute period, then that argument seems to go away. Perhaps, Your Honor, but just to address that quickly, the evidence about five to seven minutes was in for the first time in the report and recommendation objections. And I think the law is clear that when new evidence is presented there, the district court has discretion not to consider it. The district court did not say whether it was considering it or not. So we don't have any, I mean, perhaps the district court wouldn't have abused its discretion if it decided not to consider it. But doesn't the district court at least have to say what it's doing with that evidence? No, Your Honor. I think it's acceptable for the district court to say that this was new evidence and they're not going to... Did the district court say that? I believe so, yes, Your Honor. I believe it said that this was new evidence and they had discretion not to consider it. And as a result, they were not going to consider it. That's in the summary, that's in the district court order adopting the R&R? I believe it may have been in the R&R itself, Your Honor. Okay, but so these were objections to the R&R, right? Correct. So how could it have been in the R&R if the objections came after the R&R? And we're talking about the district judge's decision. You're correct, Your Honor. You're correct. It must have been then in the final order. So I guess my question is, so you're saying that the district judge in the final order said that we're not considering this evidence? That's correct because it was newly raised. I don't recall that, but you may be right. Okay. And again, I see that my time is up. So thank you. All right. Thank you very much, Ms. Guzman. We appreciate it. Thank you, Your Honors. On rebuttal, just a few quick points. First, regarding what was being discussed there at the end. First, Mr. Jordan, in his amended response to the summary judgment motion, stated that there was no way that the attack lasted less than one minute. And this was the first time that he clearly stated that, but the magistrate court never actually addressed that in their report and recommendations to the district court. But that doesn't help much because saying that it couldn't have lasted less than one minute means it could have been a minute, 15 seconds. That doesn't provide much help to him. That's correct, Your Honor. I think the point is that the magistrate court just didn't address it at all, that he said it was a different timing than what the prison officials said that the time was. And additionally, in his objection to the report and recommendations, Mr. Jordan did say that it lasted five to seven minutes, and the district court never addressed his contention about the five to seven minutes, as Judge Rosenbaum was asking. They never actually said anything specifically about that claim by Mr. Jordan about the time span of the attack itself. Ms. Cusimano says that even assuming that the district court made some mistakes on the first prong of qualified immunity, the law was not clearly established. And as a result, the officers are entitled to qualified immunity. What's your response to that? Well, I disagree on both points. First, to the failure to protect claim. Under this court's decision in Bowen and this court's decision in Caldwell, the prison officials have a duty when they know of something to protect the inmates here. And here, Mr. Jordan has sufficiently alleged, and as I discussed before, that the prison officials and the prison officials have never denied that they did indeed have knowledge of Mr. Upshaw's violent nature. But on the failure to protect claim here, there is established precedent that would show that the prison officials violated his constitutional rights. First, in the Supreme Court's decision of Farmer v. Brennan, the Supreme Court established that prison officials must protect and provide protection to inmates from attack from other inmates. And then second, in this court's decision of Rodriguez, this court said that when a prison official has the ability to do something that would mitigate the circumstances, they must do that. And when they don't, when they knowingly and recklessly fail to do so, they are deliberately indifferent. And then as our brief discussed, there are two unpublished decisions which the prison officials contend shouldn't be used here, but they at least show that under the precedent established by Rodriguez and Farmer v. Brennan, that the clearly established part of the analysis can be met in a failure to intervene claim where prison officials do not intervene in an attack when they know it's happening and they don't use those, those things they have available to them to stop the attack. Can I ask you a question on something that I was asking your friend about? So I've just taken a quick look at the record again, and in the order itself, granting the motion for summary judgment, adopting the R&R, I just don't see where it says that the court considered or didn't consider your client's objections. Where the court addresses it is in the order for the order on the motion for reconsideration, which seems to me to be a different standard because then you have to satisfy the requirements of the rule and you have to establish that there's newly discovered evidence. So I guess my question for you is, am I missing something here? Is there some reason, can we, is there something, can we use what's in the order on reconsideration to evaluate whether the district court in the first instance on the order adopting the R&R considered the objections? No, your honor, I don't believe so. When a court decides on the motion for summary judgment in their order granting that motion for summary judgment, they don't address a certain point. That's what you have before you. And while, yes, they may have addressed it in the denial of the motion for consideration, in their actual grant of the motion for summary judgment, they never mentioned Mr. Jordan's contention about the five to seven minutes. And so this court should note that, and for that reason, the court has abuse of discretion here, your honors, and I see that I'm out of time. So thank you, your honors. All right. Thank you very much, your honor.